

1

2

3    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   LEONARD ROOFING, INC.,        )   Case No. EDCV 12-00156 VAP
                                    )   (DTBx)
12              Plaintiff,          )
                                    )   **FINDINGS OF FACT AND**
13        v.                        )   **CONCLUSIONS OF LAW AFTER**
                                    )   **COURT TRIAL ON SUBMITTED**
14   IRONSHORE SPECIALTY           )   **EVIDENCE AND BRIEFS**
     INSURANCE COMPANY, AND         )
15   IRONSHORE HOLDINGS            )
     (U.S.) INC., AND DOES 1        )
16   THROUGH 50, INCLUSIVE,         )
                                    )
17              Defendants.         )
     _____       )
18

19

20        Following the Court's rulings on the parties' cross-motions for summary

21   judgment and summary adjudication on March 29, 2013 (Doc. No. 186), the

22   Court conducted a pretrial conference on the remaining claims in this action

23   on July 15, 2013.  Both sides withdrew their requests for jury trial, and

24   stipulated to a court trial on the four issues described below on the basis of

25   the stipulated items of evidence and the parties' trial briefs, waiving their

26   rights to present live testimony.

27

28        The parties thereafter timely filed trial briefs on July 22, 2013 (Doc. Nos.
     211, 212).  Having considered the evidence submitted pursuant to the Joint

Stipulation as to Facts and Evidence Admitted at Trial (Doc. No. 209) ("Joint Stipulation" or "Jt. Stip."), as well as all the briefing submitted by the parties, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, and issues its decision below.

**FINDINGS OF FACT**

1. Plaintiff Leonard Roofing, Inc.("Plaintiff") is a roofing and sheet metal subcontractor.  (Pretrial Conference Order (Doc. No. 206-1) ("PTCO") ¶ 5(1).)

2. Defendant Ironshore Specialty Insurance Company and Ironshore Holdings (U.S.), Inc., (collectively, "Ironshore") is an insurance company.  (Id. ¶ 5(2).)

3. Ironshore and Leonard entered into a commercial liability insurance contract for the period April 30, 2009, through April 30, 2010 ("the Policy").  (Id. ¶ 5(3); Jt. Stip., Ex. 1.)

4. The Policy's inception date was April 30, 2009 and its expiration date was April 30, 2010.  (PTCO ¶ 5(4)-(5).)  Exhibit 1 to the Joint Stipulation is a true and correct copy of the Policy.  (Jt. Stip. ¶ III(A)(1).)

5. Homeowners filed actions in the California Superior Court (the "Underlying Actions") against Leonard, alleging property damage, in the following actions:  (1) Abel v. Pulte Home Corp.; (2) Beserra v. K. Hovnanian Communities, Inc.; (3) Burns v. Centex Homes; and (4) Hays v. Beazer Homes Holding Corp.  (Minute Order Granting in Part Plaintiff's Motion for Partial Summary Judgment and Granting in Part Defendant's Motion for Summary Judgment Dated March 29, 2013 (Doc. No. 186) ("3-29-13 Min. Ord.") at 5.)

6. Ironshore currently is providing a defense to Leonard in the <u>Abel</u> and
   <u>Beserra</u> lawsuits.  (PTCO ¶ 5(6).)

**A.    The claim based on the fees incurred in <u>Abel</u>**

7. In <u>Abel</u>, Leonard incurred claimed attorneys' fees and costs of $351.00.
   (<u>Id.</u> ¶ 7(A); Jt. Stip., Ex 2.)  All of these fees and costs were incurred no
   later than February 26, 2012.  (Jt. Stip., Ex. 2.)

8. Leonard tendered its defense in the <u>Abel</u> case to Ironshore on May 7,
   2012.  (Jt. Stip., ¶ III(B)(10).)

9. On June 21, 2011, an additional insured under the Policy, Pulte Home
   Corp., tendered a so-called "S.B. 800"[1] claim to Ironshore.  (<u>Id.</u> ¶
   III(B)(5).)  Leonard acknowledged receipt of the claim but denied a
   defense. (<u>Id.</u> ¶¶ III(B)(6)-(7).)

10. The Policy provides certain coverage for "'property damage' to which
    this insurance applies," and that Ironshore has the "duty to defend
    [Leonard] against any 'suit' seeking those damages."  (Jt. Stip., Ex. 1, at
    1 of 14.)  The Policy also provides: "No insured will, except at that
    insured's own cost, voluntarily make a payment, assume any obligation,
    or incur any expense, other than for first aid, without our consent." (Jt.
    Stip., Ex. 1, at 10 of 14.)  The term "suit" is defined in the Policy as
    follows:  "a civil proceeding in which damages because of . . . 'property
    damage' . . . to which this insurance applies are alleged." (Jt. Stip., Ex.
    1, at 14 of 14.)

11. Leonard did not become a party to the <u>Abel</u> suit until April 6, 2012.  On
    that date, it was named as a cross-defendant.  (Jt. Stip., ¶ III(A)(9).)

---

[1]California Civil Code section 910 requires a homeowner to serve notice
of a construction defect claim to commence the prelitigation process before
filing suit.  Cal. Civ. Code §910(a).

**B.     The Claim Based on the Fees Incurred in <u>Beserra</u>**

12.   In <u>Beserra</u>, Leonard incurred $97.50 in claimed attorneys' fees and costs.  (Jt. Stip. ¶¶ III(C)(12)-(13.)

**C.     The Claim Based on the Fees Incurred in <u>Burns</u>**

10.   In <u>Burns</u>, Leonard incurred claimed attorneys' fees and costs of $236.00.  (<u>Id.</u> ¶ III(D)(17).)   The invoice for these fees, admitted by stipulation as Joint Exhibit 4, shows that the services were provided on or before December 31, 2010.  (Jt. Stip., Ex. 4.)  Leonard did not tender defense of the <u>Burns</u> action until June 10, 2011.  (Jt. Stip., ¶ III(D)(19).)

**D.     The Claim Based on the Fees Incurred in <u>Hays</u>**

11.   The parties dispute the sum of $6,989.00 in fees and costs Leonard asserts were incurred in connection with the defense of the <u>Hays</u> action.  According to the invoice admitted as stipulated Joint Exhibit 5, $4,547.00 was incurred before June 15, 2011, the date when Leonard first tendered the defense of the <u>Hays</u> action to Ironshore.[2]  (Jt. Stip., ¶ III(E)(23).)

12.   The balance of these fees and costs is $2,442.00.

**E.     The Claim Based on the $5,000.00 Settlement Payment in <u>Hays</u>**

13.   In <u>Hays</u>, the amount of Leonard's indemnity payment was $5,000.00.  (Jt. Stip. ¶ III(E)(30).)

---

[2]Ironshore incorrectly calculated the pre-tender fees and costs in their trial brief.  (<u>See</u> Defendant Ironshore's Trial Brief (Doc. No.212) at 1.)

4

14. Leonard completed all work on the properties which were the subject of the <u>Hays</u> suit before the inception date of the Policy.  (<u>Id.</u> ¶ III(E)(25).)

## CONCLUSIONS OF LAW

**A.   Jurisdiction**

1.  The Court has jurisdiction over this action under its diversity jurisdiction, 28 U.S.C. § 1332 (a).  Personal jurisdiction exists over Ironshore because it contracted with Plaintiff, a resident of Riverside County.  Venue is properly laid in the Central District of California under 28 U.S.C. § 1391 because Ironshore transacts business in this District.

2.  The events giving rise to this action occurred within the jurisdiction of the Central District of California, and the Court applies California substantive law to resolve the claims alleged. <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>St. Paul Fire and Marine Ins. Co. v. Weiner</u>, 606 F.2d 864, 867 (9th Cir. 1979) (applying California substantive law for an action brought in a district court in California pursuant to its diversity jurisdiction); <u>State Farm Mut. Auto. Ins. Co. v. Khoe</u>, 884 F.2d 401, 405 (9th Cir. 1989) (applying California substantive law to breach of insurance contract action).

**B.   Breach of Contract**

3.  A plaintiff seeking to recover for breach of contract must prove (1) the existence of the contract; (2) the plaintiff's performance under the contract or excuse for any nonperformance; (3) the defendant's breach of the contract; and (4) the resulting damages

5

1   suffered by the plaintiff. <u>CDF Firefighters v. Maldonado</u>, 158 Cal.
2   App. 4th 1226, 1239 (2008).

3

**C.   Breach of the Duty to Defend by Ironshore – the <u>Abel</u> Claim**

4.  As to the claim that it is owed $351.00 for defense costs and fees
    incurred in the <u>Abel</u> case, Leonard failed to prove, by a
    preponderance of the evidence, each of the elements of its claim
    against Ironshore for breach of contract, <u>i.e.</u>, breach of its duty to
    defend.

5.  Ironshore did not abandon or forfeit its defense that the fees and
    costs at issue in <u>Abel</u> were incurred before tender of the defense
    to the insurance carrier.  Leonard's claim to this effect is meritless
    for at least two reasons.

6.  Leonard cites the answer filed by Ironshore and points to the lack
    of an affirmative defense specifically asserting the fees and costs
    in question were incurred pre-tender.  (Plaintiff Leonard Roofing's
    Trial Brief (Doc. No. 211) ("Pl.'s Trial Br.") at 10.)  The Pretrial
    Conference Order supersedes the pleadings, including the
    complaint and answer, and controls the course of the litigation
    thereafter.  Fed. R. Civ. P. 16(d); <u>Northwest Acceptance Corp. v.
    Lynnwood Equipment, Inc.</u>, 841 F.2d 918, 924 (9th Cir. 1988).  In
    the Pretrial Conference Order here, Ironshore specifically
    preserved its contention that the fees were incurred pre-tender, as
    follows:  "Ironshore is not liable for [the $351.00] because it was
    incurred without Ironshore's permission well before Leonard
    became party to the <u>Abel</u> lawsuit. . . .. Leonard first told Ironshore
    that Leonard had been named in the <u>Abel</u> lawsuit . . . well after

6

the $351 had already been voluntarily incurred without Ironshore's consent."  (PTCO at 10.)

7.   In addition, the Pretrial Conference Order reiterated the Fourteenth Affirmative Defense set forth in Ironshore's Answer: "The Subject Policy requires as a condition precedent to coverage that the insured comply with all terms prior to bringing a legal action against Ironshore.  Plaintiff's claims are barred to the extent that it failed to comply with all terms prior to bringing the instant legal action."  (PTCO at 10.)

8.   The Pretrial Conference Order also reiterated the Twenty-Second Affirmative Defense set forth in Ironshore's Answer:  "'The Ironshore Policy provides that '[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (PTCO at 12.)  To the extent that in connection with the claims asserted in the instant action, plaintiff has voluntarily made a payment, assumed any obligation, or incurred any expense other than for first aid, without Ironshore's consent, any such payment, expense, or obligation is for plaintiff's own account. Ironshore is not responsible for coverage of any such payment or obligation or reimbursement of any such expense.  If Leonard carries its burden of proof, then Ironshore may show that Leonard incurred defense costs before tendering the claims to Ironshore. Ironshore is not liable for any such defense costs." (Id.)

9.   Furthermore, the burden is on a plaintiff asserting a breach of contract claim to establish the breach in the first instance.  In

7

order to prove that Ironshore breached its duty to defend under the Policy, Leonard must show that it complied with the terms of the Policy in tendering the defense.  Thus, it appears that it was not necessary tor Ironshore to plead the pre-tender nature of the costs as an affirmative defense.

10.  Leonard contends that the tender requirement was satisfied by the notification on June 21, 2011, by Pulte Home Corp. of the "S.B. 800" claim to Ironshore.  (Jt. Stip., ¶ III(B)(5).)  Ironshore disputes this contention.  The Court finds that Leonard did not satisfy the Policy's requirements regarding tender of the defense of the Abel action, for the following reasons.

    a.  Leonard asserts that the S.B. 800 claim fits within the policy definition of "suit," because such a notice is a prerequisite to filing suit, and because the implementing statute, Civil Code section 910, describes a complex set of procedures for the alternative resolution of construction defect claims.

    b.  California Civil Code section 910 requires a homeowner to serve notice of a construction defect claim to commence the prelitigation process before bringing a lawsuit.  The statute provides in relevant part: "Prior to filing an action against any party alleged to have contributed to a violation . . . , the claimant shall initiate the following prelitigation procedures: [] (a) The claimant or his or her legal representative shall provide written notice . . . of the claimant's claim."  Cal. Civ. Code § 910(a).  This written notice "shall have the same force and effect as a notice of commencement of a legal proceeding."  Id.

c.    The language in Section 910 is similar to that in the
      Calderon Act, found at California Civil Code section
      1375(a), which requires a homeowners' association to give
      notice to builders, developers, or general contractors by
      serving a "Notice of Commencement of Legal Proceedings."
      Cal. Civ Code § 1375(e)(2); <u>D.R. Horton Los Angeles
      Holding Co., Inc. v. American Safety Indem. Co.</u>, 2012 WL
      33070, at *19 (S.D. Cal. Jan. 5, 2012).  Plaintiff here relies
      on <u>D.R. Horton</u>, where Plaintiff, a builder, received several
      "notices to builder," pursuant to Section 910 (the "Notices").
      <u>D.R. Horton</u>, 2012 WL 33070, at *1.  Plaintiff provided the
      insurer with a copy of the Notices.  <u>D.R. Horton</u>, 2012 WL
      33070, at *4, *19.  Plaintiff contended that, pursuant to
      Section 910, the Notices commenced a civil proceeding.  <u>Id.</u>
      The <u>D.R. Horton</u> court compared the language in Section
      910 to the Calderon Act, and came to the conclusion that
      the insurer had a duty to defend plaintiff because they
      received the Notices, and those Notices commenced a legal
      proceeding.  <u>Id.</u>

d.    <u>D.R. Horton</u>'s holding is of no avail to Plaintiff here.  In the
      present case, it was Pulte Home Corp. ("Pulte"), an
      additional insured under the Policy, who tendered a claim to
      Ironshore in which the parties who would later become the
      plaintiffs in the <u>Abel</u> suit were asserting construction defect
      claims against Pulte under S.B. 800.  (Jt. Stip., ¶ III(B)(5).)
      The <u>Abel</u> plaintiffs filed suit against Pulte, but not Leonard,
      on February 9, 2012.  (<u>Id.</u> at ¶ III(B)(8).)  Leonard first

became a party to the <u>Abel</u> suit on April 6, 2012, when Leonard was named as a cross-defendant.  (<u>Id.</u> at ¶ III(B)(9).)  On May 7, 2012, Leonard first communicated to Ironshore that Leonard had become a party in the <u>Abel</u> suit.  (<u>Id.</u> at ¶ III(B)(10).)  In sum, Leonard never tendered the S.B. 800 claim to Ironshore, and the claim was not directed against Leonard.  Leonard was not named in the action filed by the <u>Abel</u> plaintiffs, and did not become a party to the action brought by the <u>Abel</u> plaintiffs until named as a cross-defendant.  Leonard did not tender the defense of the cross-complaint until after the fees in question were incurred.

11. Endorsement No. 6 to the Policy modifies the insurance provided by providing for deductible amounts, <u>i.e.</u>, amounts the insured is responsible to pay before insurance coverage applies.  Paragraph 1 of Endorsement No. 6 states that Ironshore's "obligation . . . to pay damages . . . applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages . . . ."  (Jt. Stip., Ex. 1, Endorsement No. 6, ¶ 1.)  Here, the deductible amount scheduled for property damage is $10,000 "per occurrence," and the Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Jt. Stip., Ex. 1, at 2 of 4, 13 of 14.)   This deductible applies to each claim made under the policy.  (<u>Id.</u>)  Leonard has failed to meet its burden of proving that the amount sought for the defense fees and costs incurred in the <u>Abel</u> case exceeded the

1    deductible amount.  For that reason as well, it is not entitled to

2    recover as to the <u>Abel</u> claim.

3

4  **D.    Breach of the Duty to Defend by Ironshore  – the <u>Beserra</u> Claim**

5        12.   Leonard seeks $97.50 for fees and costs allegedly incurred in the

6              defense of the <u>Beserra</u> action.  Leonard tendered the defense of

7              the <u>Beserra</u> lawsuit on November 30, 2011, and Ironshore

8              accepted the defense on June 19, 2012.  (Jt. Stip. ¶ III(C)(14).)  In

9              its trial brief, Leonard merely states that "[t]he amount of the

10             requested defense cost damages are fully supported by

11             undisputed billing invoices and agreed upon amounts".  (Pl.'s Trial

12             Br. at 7.)  The Joint Stipulation, however, merely states that

13             Invoice 20509, admitted by stipulation as Joint Exhibit 3,

14             "accurately reflects the charges as described, and the services

15             were rendered on the dates shown."  (Jt. Stip. ¶¶ III(C)(11)-(13).)

16             There is no stipulation or agreement that the charges were

17             incurred in defense of the <u>Beserra</u> case.

18       13.   Leonard has not met its burden of proving by a preponderance of

19             the evidence that the charges at issue were incurred in its

20             defense in <u>Beserra</u>.  There is no declaration from counsel or any

21             principal of Leonard Roofing regarding the nature of the work

22             evidenced by the invoice.  Hence, the Court finds in favor of

23             Ironshore on this claim.

24       14.   Endorsement No. 6 to the Policy modifies the insurance provided

25             by providing for deductible amounts, <u>i.e.</u>, amounts the insured is

26             responsible to pay before insurance coverage applies.  Paragraph

27             1 of Endorsement No. 6 states that Ironshore's "obligation . . . to

28

1    pay damages . . . applies only to the amount of damages in
2    excess of any deductible amounts stated in the Schedule above
3    as applicable to such coverages . . . ." (Jt. Stip., Ex. 1,
4    Endorsement No. 6, ¶ 1.)  Here, the deductible amount scheduled
5    for property damage is $10,000 "per occurrence," and the Policy
6    defines "occurrence" as "an accident, including continuous or
7    repeated exposure to substantially the same general harmful
8    conditions." (Jt. Stip., Ex. 1, at 2 of 4, 13 of 14.)   This deductible
9    applies to each claim made under the policy.  (Id.)  Leonard has
10   failed to meet its burden of proving that the amount sought for the
11   defense fees and costs incurred in the Beserra case exceeded
12   the deductible amount.  For that reason as well, it is not entitled to
13   recover as to the Beserra claim.

14

15

16   **E.    Breach of the Duty to Defend by Ironshore  – the Burns Claim**

17        15.    Leonard has not met its burden of proof with respect to the
18              $236.00 in fees it claims in connection with the Burns case.  As
19              payment for these fees was made before the defense was
20              tendered to Ironshore, it comes within the Policy provision against
21              voluntary payments:  "No insured will, except at that insured's
22              own cost, voluntarily make a payment, assume any obligation, or
23              incur any expense, other than for first aid, without our consent."
24              (Jt. Stip., Ex. 1 at 10 of 14.)

25        16.    Endorsement No. 6 to the Policy modifies the insurance provided
26              by providing for deductible amounts, i.e., amounts the insured is
27              responsible to pay before insurance coverage applies.  Paragraph

28

1 of Endorsement No. 6 states that Ironshore's "obligation . . . to pay damages . . . applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages . . . ." (Jt. Stip., Ex. 1, Endorsement No. 6, ¶ 1.)  Here, the deductible amount scheduled for property damage is $10,000 "per occurrence," and the Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Jt. Stip., Ex. 1, at 2 of 4, 13 of 14.)  This deductible applies to each claim made under the policy.  (Id.)  Leonard has failed to meet its burden of proving that the amount sought for the defense fees and costs incurred in the Burns case exceeded the deductible amount.  For that reason as well, it is not entitled to recover as to the Burns claim.

**F. Breach of the Duty to Defend - the Hays Claim**

17. Leonard has not met its burden of proof with respect to the $4,547.00 in fees and costs that were incurred before June 15, 2011, the date when Leonard first tendered the defense of the Hays action to Ironshore.  (Jt. Stip., ¶ III(E)(23).)  Again, this payment comes with the Policy provision against voluntary payments, cited above.

18. Leonard's remaining fees and costs sought for the defense of the Hays action totals $2,442.00.  It has not carried its burden of proof as to these fees, incurred post-tender, either.  In its trial brief, Leonard merely states that "[t]he amount of the requested

defense cost damages are fully supported by undisputed billing invoices and agreed upon amounts". (Pl.'s Trial Br. at 7.) The Joint Stipulation, however, merely states that Invoice No. 19956, admitted by stipulation as Joint Exhibit 5, "accurately reflects the charges as described, and the services were rendered on the dates shown." (Jt. Stip. ¶¶ III(E)(21)-(22).) There is no stipulation or agreement that the charges were incurred in defense of the <u>Hays</u> case.

19. Leonard has not met its burden of proving by a preponderance of the evidence that the charges at issue were incurred in its defense in <u>Hays</u>. There is no declaration from counsel or any principal of Leonard Roofing regarding the nature of the work evidenced by the invoice. Hence, the Court finds in favor of Ironshore on this claim.

## G. Breach of the Duty to Indemnify – the <u>Hays</u> Claim

20. An insurer's duty to indemnify only arises when the insured's underlying liability is established. <u>Armstrong World Indust., Inc., v. Aetna Cas. & Surety Co.</u>, 45 Cal. App. 1, 108 (1996). "The duty to indemnify on a particular claim is determined by the actual basis of liability imposed on the insured." <u>Id.</u>; citations omitted.

21. Leonard first tendered the <u>Hays</u> action to Ironshore on June 15, 2011. (Jt. Stip. ¶ III(E)(23).) Leonard, the insured, has the burden of proving that the $5,000.00 it paid in settlement of the <u>Hays</u> claims was payment for damages actually covered under the Policy. <u>MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.</u>, 187 Cal. App. 4th 766, 777 (2010) ("When an

14

issue of coverage exists, the burden is on the insured to prove facts establishing that the claimed loss falls within the coverage provided by the policy's insuring clause.")

22. The only evidence Leonard offers on this issue is the complaint and amended complaints filed in the <u>Hays</u> case.  (<u>See</u> Jt. Stip., Exs. 6-8.)  This is insufficient to meet its burden that the loss came within the Policy.

23. Endorsement No. 6 to the Policy modifies the insurance provided by providing for deductible amounts, <u>i.e.</u>, amounts the insured is responsible to pay before insurance coverage applies.  Paragraph 1 of Endorsement No. 6 states that Ironshore's "obligation . . . to pay damages . . . applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages . . . ."  (Jt. Stip., Ex. 1, Endorsement No. 6, ¶ 1.)  Here, the deductible amount scheduled for property damage is $10,000 "per occurrence," and the Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Jt. Stip., Ex. 1, at 2 of 4, 13 of 14.)  The $5,000.00 sought by Leonard is less than the deductible amount that applied; even if the post-tender fees and costs amount of $2,442.00 were allowed, the total of $6,989.00 would still be within the deductible amount.

24.   Hence, Ironshore is entitled to judgment in its favor on this claim.

**IT IS SO ORDERED.**

Dated:       August 29, 2013

_____
VIRGINIA A. PHILLIPS
United States District Judge

16